Your Honor, Counsel, Douglas Brown for Appellant Fe Garrett. I just wanted to touch briefly on a few of the issues that the Appellant has raised on appeal. The first was the Batson issue. The government proffered the reason for challenging the only Filipino on the jury, and this defendant, it should be noted, was Filipino, was that he was unemployed, single, and young. There isn't any indication in the record what the young part means, but those were the only reasons for the challenge. I know basically the court found that there was a prima facie base of discrimination, but found that under the facts, as he saw that this wasn't pretextual, we think then reviewed that that was a finding that was not properly taken and would ask the court to take another look clearly at the Batson violation. Because given the context of this case, with this particular defendant especially, I think the fact that the only Filipino juror was excused was to her prejudice. I didn't see where in the transcript there was a comparison between this juror who was thrown off and other people who were young and unemployed and whatever were allowed to stay. Unfortunately, none of the parties before the court participated in the district court trial, but I have to concede that it's very difficult to tell exactly from the transcript, for example, how young a person is or whether other are. How can we possibly find clear error on the part of the judge in those service cases? Well, because I think just the fact that someone is unemployed and single is not an adequate reason if that person is the only person of a particular ethnic race, which in this case was from the Philippines. I don't think that's enough. I think on its face that that is pretextual. So our position is that if that is the only justification and there isn't any other legitimate reason, and I just don't think unemployed and single is enough, I don't know that that should be a disqualifying factor when the only person on the panel that's challenged is the Filipino. Beyond that, I don't think I could elaborate any more. Counsel, many of the people had contacts and friendships in the Filipino community. Isn't that correct? Yes. Yes, that is correct, although I don't think that just because, as the record reflects, some people enjoyed food from the Philippines and I know people from the Philippines, I don't think that's quite the same as having someone whose ethnicity originates in the Philippines. So while that was discussed in the district court, I certainly on this record don't believe that that really carries any weight respectfully. The second issue I wanted to move on to was rebuttal argument, where the government probably on four or five or six occasions called the defendant either arrogant or a liar. Now, three of the objections were sustained by the court, but again, I think this was a personal opinion. It was vouching and when coupled with the facts of this particular case that the argument, especially in rebuttal where there's no rejoinder, was prejudicial. Did you read that third objection to be an objection to the arrogant characterization or an objection to the statements about Ms. Garrett lying? I read it as they were talking about vouching, and I think the objections they were probably talking to was. That lying wasn't really about his personal opinion. The way I, it's ambiguous from the record. Again, not a great record. Right, right. I agree. I mean, for sure, the vouching they were talking about, the prosecutor on two occasions said that the government witnesses were basically telling the truth, and I think the record is clear on that issue. I don't know whether or not the objections went to the description that the defendant is arrogant. It would have to be viewed by plain error or wasn't objected to. It's just unclear to me. There were objections to the argument, which, as you say, the judge sustained. Was there also a motion for mistrial, I mean? No. So you made there was an objection, sustained, and that's where it was left? Yes. There was no request, as I recall, for curative instructions or anything along those lines. That's how it was resolved. But you weren't counsel at the time. No, I wasn't counsel. Right. So you're going from the record. I'm going from the record and trying to glean what I can. And the final issue that I want to discuss was the Fred issue. I think this defendant was uniquely unqualified to represent herself. I know this is an extremely difficult issue for the courts to grapple with. I know that this particular defendant was particularly difficult to work with. But the bottom line is, as I read the Freda decision, the decision to forego counsel has to be clear and unequivocal. And at the time of sentencing, when the defendant asked for or there was a discussion about whether or not she was going pro se, she said she wanted counsel. She just didn't want to have the counsel that she presently had that had been appointed for the sentencing purposes. So I see that, after reading the Freda decision, as certainly equivocal. She's not saying she doesn't want a lawyer. She just doesn't want the lawyer that she's been appointed. She didn't seem to want any lawyer that was appointed. And she didn't really have a right to make that choice. She made it clear she didn't want Adams. Yes. She made it clear she didn't want that particular attorney. And I think it's a pretty fair statement of law that the defendants don't get to pick their own criminal justice attorney. On the other hand, we have to consider the fairness of the proceeding. She asked that one of the attorneys from federal defenders that had previously represented her be appointed. So I don't think it would have been that much of a stretch for the court to reappoint someone that was familiar with the case and with whom she'd expressed some comfort, especially in the light of the fact that she appears not to be able to get along with a lot of the lawyers. Hadn't she fired one previously as well? She fired a number of lawyers. She had three from federal defenders. Then Mr. Adams was appointed. And then another lawyer was appointed for appeal. So the truth of the matter is I'm the sixth. Okay. So she's troubled. Yeah. But that's another issue. That is an issue. That is an issue. When I read this transcript, that's what I thought, that this woman had some perhaps emotional, maybe even worse, issues. And I'm wondering why that wasn't dealt with in the trial in some way. Well, I don't know either. And I can't opine and argue something that's not in the record. But there's enough inferences from the letters and everything else. And she clearly was confused at the time of sentencing. And as the district court judge himself said, he was a little confused about what was supposed to be relevant conduct and what was proved at trial as far as the amount of the loss. Because there's a base offense level difference of 24 or 20 between what was proved at trial and what was proved at sentencing via the declaration submitted by the government. So I think there's some prejudice in the sentencing in that she was ill-equipped. It was a complicated tax issue. And she didn't have time to prepare. And the court would not give her additional time to prepare for sentencing. So I think a remand for sentencing might be appropriate also. And I think I would like to reserve my last two minutes if I could for any possible debate. Thank you. Good morning, Ms. Bagley. Yes, thank you, Your Honor. Katie Bagley on behalf of the United States. I'd like to start by addressing the defendant's argument about the Batson challenge. As this court knows, the judge's finding that the government was not acting with the intent to discriminate is reviewed only for clear error. And in this case, the district court, I think, did an admirable job of making the record on its Batson findings. It acknowledged that the only Filipino on the jury had been stricken. The government indicated that it had structures who were students, unemployed. Otherwise, the government had reason to believe they did not have experience working in paying taxes. Counsel? Ms. Bagley, hang on a second. There's a word letter. We're having trouble with, yeah. So on that point, did the prosecutor ever ask Marquez whether he was employed or not? No, Mr. Marquez indicated that he was not employed at the time during the board year. Did he ask whether he had ever been employed? I mean, it wasn't the basis for the decision that that was a legitimate nondiscriminatory reason, that a distinction between people who were employed or had been employed previously versus people who had never been employed at all. We really don't know whether Marquez had ever been employed at all. We don't have that information. What we do know is that both the court and the government described him as being young, and that description was not challenged below. What does young mean based on this record? Based on this record, we don't know. Mr. Marquez indicated that he had emigrated from the Philippines with his parents 10 years ago, suggesting that he wasn't, certainly wasn't out of his 20s. How do you know that? I would note that that's an, sorry, Your Honor. How do you know that? How do you know, when did he emigrate? Do you know? He indicated, I believe it was, he did not indicate his age, Your Honor. But I would note, first of all, that the judge had the opportunity to view the juror in question, and also that Batson doesn't require the government to be surgical in its strikes. It only requires that the government not discriminate on the basis of race. In this case, certainly the government had no reason to do so. Most of its witnesses were Filipino as well. So the suggestion that the government had some desire to strike Filipino jurors doesn't make sense in this particular context. Were there any Filipino? The judge. Excuse me. I'm sorry. I know it's hard to communicate this way. But were there any other Filipino jurors that sat on the jury? No, there were not. I believe Mr. Marquez was the only Filipino who was on the veneer panel. It appears that way from the record. And I would also note that Batson doesn't require that the race-neutral reason be the equivalent of a challenge for cause. The government is allowed to strike people based on its understanding of what kind of jurors it would like. In this case, the government said that it wanted people who had a history of working and filing tax returns. The tax returns at issue in this case involved itemized deductions like charitable deductions, child care expenses, the kinds of things that a young person who was currently unemployed and the government, we did not have much of an employment history, was a perfectly valid reason. The prosecutor indicated that the government had also struck students and other people who were unemployed. That was not challenged below either. Counsel, who was left on the jury? Were there people on the jury who had evidence that they did or did not file tax returns? No, actually none of the people who identified themselves as students, as being currently unemployed, or as homemakers were eventually seated on the jury. So the only people who made it on the jury were either employed or retired after presumably a career of working and filing tax returns. And I would just say again that the district court, who had the opportunity to witness the entire process, to view all of the jurors and to know who exercised their peremptory strikes in what way, found not only that the government's reason was valid and plausible, but made the ultimate finding under Batson that the government had evinced no intent to discriminate on the basis of race. And that finding, there's no reason in this record to challenge that. There's no suggestion that the court was mistaken in that ultimate finding, which is of course given great deference by this court because of the district court's ability to view the jury selection process. If there are no other questions on that issue, I would like to move on to briefly to touch on the argument about vouching. Certainly in this case, the defendant did not identify with specificity which comments of the prosecutor she was objecting to. The government assumes that she referred to the comments to which she objected during trial. In that case, there was only one comment that we can see constituted improper vouching, when the prosecutor stated that the witnesses were telling the truth. Why is that vouching? However. Why is that vouching for the prosecutors to argue that witnesses were telling the truth? Certainly had the prosecutor based her argument on the evidence that was introduced at trial, there would be nothing improper about it. However, we can see that the comment, the witnesses were telling the truth, might have been understood as expressing a personal opinion. I'm not clear why that, I'm not, excuse me, I'm not, I just, I respect your concession, I just don't get from the record why a lawyer stands up and argues to the jury, these witnesses are telling the truth, why that would be vouching. I mean every case, every case the credibility of witnesses is an issue and lawyers argue this witness is telling the truth, this witness is not telling the truth. I mean why would that be vouching? Did she preface it with something like I know this personally or why would it be? No, she did not. She did not. Your Honor, frankly I'm not, I'm not wanting to argue with you on this point. I think if it's vouching it's very minimal. She didn't say trust me I know or indicate that she had any kind of private knowledge or anything like that. It's either or it's not vouching and the government conceded that statement was vouching. I think Judge Silverman has a good question. It's either, it either is or it isn't. Right, and we concede that the court did not err in sustaining the objection on the basis of vouching. What we do think is that that particular comment was not prejudicial to the defendant in any way. First of all, the jury was properly instructed that the arguments of the attorneys were not evidence. The defense attorney's opening salvo in the case was to accuse all the government witnesses of committing perjury. And so certainly I think the jury can understand the prosecutor's response in that context. And most importantly, the evidence against the defendant was overwhelming. She prepared a false tax return for an undercover agent. She was taped discussing how she prepared false tax returns. And 11 witnesses testified that she prepared false tax returns for them. So the single isolated comment by the prosecutor in the context of I believe a nine-day trial, the defendant simply cannot show that it had any impact on the outcome, let alone that it was more likely than not that it affected the outcome of the case. Any other comment? Can we talk about Verretta for a minute as to whether or not her statement was unequivocal? The last statement she made was, yes, I do need counsel, Your Honor, I do, but the problem is not this guy, not Mr. Adams. Why isn't that equivocal? I mean, she's saying, I do need counsel. And from this record, it looks to me like she sure did need counsel, especially with what happened at sentencing. So I don't understand why this to me seems very equivocal. Your Honor, I would respond to that by saying certainly it was conditional. The defendant indicated at some points that she would like to have an attorney, but she wanted to pick that attorney. When she was given the choice, the entirely proper choice by the trial court, you can have Mr. Adams or you can represent yourself, she indicated clearly that she wanted to represent herself rather than be represented by Mr. Adams. And that conditional request for counsel is not an unequivocal, I'm sorry, is not equivocal. The defendant here, she did express a desire for one particular attorney, an attorney she had fired previously, and the judge was clearly concerned that she was doing this in order to delay the proceedings. And I think quite rightly concerned. Please conclude. You're out of time, so if you would finish your answer to Judge Wardlaw's question, we'll move on. Okay. Thank you. I would just conclude by saying, first of all, again, the district court, who was present, made a finding that she was, she acted unequivocally, which is reviewed only for clear error, and the trial judge acted to allow the case to proceed efficiently and effectively, and you think there was no error at all. Thank you. Mr. Brown, back to you. You have a couple of minutes left. Very briefly, I just wanted to point out that there's no evidence in the record that the juror that was excused never worked, it was just that he was presently employed, so there isn't any evidence that he had failed to file tax returns. And as far as the issue of equivocal, well, the words of Freda, it's not conditional, it's, as I indicated, it has to be unequivocal, and on that I'd submit it. Thank you. Mr. Brown, thank you. Ms. Bagley, thank you as well. The case just argued is submitted. Good morning. 10-50466, United States v. Palacios, is submitted at this time on the briefs. The next case to be argued is 10-50357, United States v. Ismay. Each side will have ten minutes.
judges: Fletcher, Silverman, Wardlaw